***********
The undersigned have reviewed the prior Order by Chair Young and the Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission denies Defendants' Motion to Stay and affirms the Opinion and Award of Deputy Commissioner Rowell and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. That all parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, are properly before the Industrial Commission, with the Industrial Commission having jurisdiction over this matter.
2. That an employer-employee relationship existed between the Plaintiff-Employee and the Defendant-Employer on April 18, 2008.
3. That Gallagher Bassett Services, Inc. was the third party administrator for Zurich American Casualty Company on April 18, 2008.
4. That all parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
5. That Plaintiff's average weekly wage is $362.33 as established by Form 22 dated August 14, 2008.
6. The parties stipulated that the sole issue for hearing was whether Employee-Plaintiff suffered from a compensable injury on April 18, 2008.
7. The parties stipulated into evidence as Stipulated Exhibit No. 1, Pre-Trial Agreement, as modified and initialed by the parties.
8. The parties stipulated into evidence as Stipulated Exhibit No. 2, Industrial Commission Forms, Medical Records, and Employment Records.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. Plaintiff started his employment with Defendant-Employer in December of 2007. He was placed in light industrial assignments. Plaintiff was placed as a pipe bender at Tube Specialties in early February of 2008, and remained in this capacity until he was injured on April 18, 2008.
2. On April 18, 2008, at approximately 9:45 P.M., Plaintiff placed a pipe on the bending machine when the machine malfunctioned and the pipe became stuck. He repeatedly tried to loosen the pipe by pulling it and twisting it. When it finally released, it jerked him and he stumbled backward feeling a pop in his back, immediate pain running down his right leg causing his knees to buckle. Plaintiff immediately reported this accident to Jody Shaw, his Tube Specialties supervisor. Other Tube Specialties employees notified were Brian Blackwood and Pat Reed. Because of the time of night that the injury occurred, Corey Massey with Staff Masters was not notified until the morning of April 19, 2008.
3. On the date of the injury, Plaintiff presented to the Iredell Memorial Hospital Emergency Room and described his mechanism of injury as "moving a pipe and felt a pop in back." Plaintiff was discharged on the same day with prescriptions for Flexeril, Ultram, and a Medrol Dos Pak. He went home and attempted to let the medications take effect and provide relief, but he continued to be in pain.
4. Plaintiff presented to Dr. Mel Voulgaropoulos (hereinafter "Dr. Mel") of Carolina Family Medicine Urgent Care on April 24, 2008, six days after his initial evaluation at Iredell Memorial Hospital ER. Dr. Mel noted that Plaintiff suffered from dizziness, difficulty sleeping, and back pain, and Plaintiff had not improved since the preceding Friday, which was the date of injury. Plaintiff related to Dr. Mel that he "was pulling something hard and caused something to hurt in his back." At this time Dr. Mel diagnosed Plaintiff with a "severe back strain." Dr. Mel *Page 4 
wrote Plaintiff out of work beginning April 24, 2009, for three days until April 27, 2009. Plaintiff returned to Dr. Mel the following day, April 25, 2009, stating that he was still having back pain and reporting no relief from the medication and that the pain was continuing to worsen. Dr. Mel certified Plaintiff out of work until April 28, 2009. Plaintiff returned to Dr. Mel on April 30, 2008. Dr. Mel noted the following: "pt. still having back pain, hydrocodone helps only x 45 minutes, sleeping better". At this point, Dr. Mel re-evaluated Plaintiff's condition and was no longer treating for a lumbar strain but began looking for a diagnosis of a disk herniation. Dr. Mel noted that "normally, acute lumbar spasm, acute back pain, will resolve in 48 to 72 hours. And, in his case, it really wasn't any better and that was even with high doses of steroids and a shot into the muscle that was presumed to be in spasm." In seeking clarification of the diagnosis, Dr. Mel ordered an MRI of Plaintiff's back. Upon reading the MRI results, Dr. Mel diagnosed Plaintiff with a "moderate sized disk herniation at L5-S1."
5. As to the causation of Plaintiff's injury, Dr. Mel stated that the reported history was "very consistent with the injury he developed. [Plaintiff] did not have chronic disease." When asked if he had any reason to disbelieve what Plaintiff provided as his history, Dr. Mel stated that he had "no reason to believe there's any other motive."
6. Dr. Mel made a referral to Dr. Herbert Gooch who is with the Piedmont Spine Center. On July 2, 2008, Plaintiff reported to Dr. Gooch with complaints of a work injury occurring on April 18, 2008, and described pulling on a pipe at work, falling backward, and injuring his back. His complaint of pain was consistent in the back with intermittent numbness and tingling in his right leg. Dr. Gooch prescribed a regimented physical therapy program for the lumbar spine with stretching and strengthening as well as heat therapy with the hope it would alleviate some pain. He scheduled Plaintiff for follow up and reassessment in six weeks. Plaintiff *Page 5 
followed up with Dr. Gooch on July 10, 2008, for re-evaluation on his therapy. At this point, Dr. Gooch prescribed a regimen of lumbar epidural steroid injections at the L5-S1 level on the right side. On July 16, 2008, the first of these injections was performed by Dr. Gooch. The following injections were performed at Unifour Pain Treatment Center on July 31, 2008, and August 7, 2008.
7. At Dr. Mel's referral, Plaintiff was evaluated by Dr. Dale Rader of Statesville Orthopedic Clinic on December 16, 2008. The history was again consistent stating that he was pulling on a machine while at work on April 18, 2008, when he felt and heard a pop in his back associated with intense pain. Since that time he has had chronic back pain that radiates into his right lower extremity. Dr. Rader diagnosed Plaintiff with lumbar degenerative disk disease with a herniated propulsid at L5-S1 based on the MRI of May 14, 2008. He noted since Plaintiff had already failed other measures including physical therapy, medications, rest, activity modification, and a series of three lumbar epidural injections, that he would refer him to Dr. Jeffrey Yablon, a neurosurgeon for further treatment and evaluation.
8. On January 8, 2009, Plaintiff presented to Dr. Jeffrey Yablon who is a board certified Neurological Surgeon. Plaintiff stated to Dr. Yablon that "he was bending a pipe and felt a pop in his back, and then the immediate onset of pain." Dr. Yablon also diagnosed Plaintiff with a herniated disk at the L5-S1 level, and stated that his diagnosis was consistent with what was described to him as Plaintiff's mechanism of injury.
9. Dr. Yablon confirmed Dr. Mel's diagnosis of moderate size right paracentral disk herniation at L5-S1 based on the MRI findings and examination of the patient. Dr. Yablon recommended surgery based on Plaintiff's failure to achieve relief from conservative therapy. Surgery was performed on February 23, 2009. The procedure was microscopic right L5-S1 hemi-laminectomy *Page 6 
and diskectomy with partial medical facetectomy and foraminotomy of the right S1 nerve root with intra-operative fluoroscopy.
10. Plaintiff's post surgical diagnosis was a herniated disk and that was consistent with his initial diagnosis. It is also noted in his post surgical note, and stipulated medical records, page 36, that the post surgical diagnosis was a herniated disk on the right side at L5-S1 level.
11. On March 5, 2009, Plaintiff returned to see Dr. Yablon for a 10 day post surgical follow up. Plaintiff was having some occasional soreness but his back pain and leg pain were gone and he would remain on Robaxin. Dr. Yablon states in his deposition that the patient did extremely well throughout the surgery. Plaintiff had only some back soreness, no back pain, no leg pain, no incontinence. His neurological and general exams were completely unremarkable. Dr. Yablon further testified that he would see Plaintiff back at approximately 9 weeks, at which time he planned to consider return to work.
12. Nothing in the record or deposition evidence is inconsistent with the accident and resulting injury that Plaintiff described. To all of his work superiors and peers, as well as every treating physician he has seen, Plaintiff has consistently described an injury by accident occurring on April 18, 2008. Plaintiff consistently described that while he was on assignment to Tube Specialty, a pipe that was on the bender became stuck, he attempted to dislodge it, it abruptly let go and jerked him, causing a sharp pain in his low back with radiating pain into his right leg.
13. Based upon a review of the evidence in its entirety, it is determined that Plaintiff has shown by the greater weight of the evidence that on April 18, 2008, he experienced an interruption of his normal work duties which was unexpected and resulted in injury to his back. This review further supports and corroborates Plaintiff's claim that he suffered a compensable *Page 7 
injury to his back on April 18, 2008, as a direct result of a specific traumatic incident of the work assigned by Defendant-Employer.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On April 18, 2008, Plaintiff sustained an injury by accident to his back arising out of and in the course of his employment with Defendant. N.C. Gen. Stat. § 97-2(6).
2. Defendant is entitled to a credit for unemployment benefits received by Plaintiff pursuant to N.C. Gen. Stat. § 97-42.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for Workers' Compensation benefits is hereby granted.
2. Defendants are entitled to a credit for the amount of unemployment benefits received by Plaintiff pursuant to N.C. Gen. Stat. § 97-42.1.
3. Defendants shall be credited for half of the mediator's fee that had been paid in full by Defendants.
4. Defendants shall pay the costs.
This the 29th day of June, 2010. *Page 8 
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1